

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Wm. L. Lawson
Secretary of State
Austin, Texas

Dear Sir:

Attention: Mr. Will Mann Richardson

Opinion No. O-3663
Re: Has the charter of the Galveston
City Company, which was incorporated
by an Act of the Republic of Texas
without any stated period of cor-
porate existence, expired under
the provisions of Art. 1320,
Vernon's Annotated Civil Statutes?

Your recent request for an opinion of this Department
on the above stated question has been received.

We quote from your letter as follows:

"The Galveston City Company was incorporated by an
Act of the Republic of Texas on February 5, 1841, Gammel's
Law, Vol. II, P. 566. The charter did not state any time
of expiration and did not mention capital stock. The
franchise tax report filed by the corporation states now
that it is a real estate holding company, and from affi-
davits filed with the franchise tax reports, the company
states that it has been in liquidation for many years.

"The question of the expiration date has arisen.
Article 1320, Subdivision 1, provides that a corporation
shall exist for a period not to exceed 50 years, and if
no period is stated, it shall exist for 20 years.

"It is the contention of this company that, since
Article 1320 was passed so many years after Texas became
a state, it does not affect the charter of this old
company which was formed under the Republic of Texas
and especially since Section 7 of Article 12 of the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Wm. H. Lawson, page 2

Constitution provides 'nothing in this Article shall be construed to divest or affect rights guaranteed by an existing grant or statute of this state, or of the Republic of Texas, that a subsequent Act cannot put a restriction on the period of existence of this company.

"At any rate, this company has operated under a corporate charter for one hundred years without capital stock and without a period of existence being stated in its charter.

"We should like to have an opinion from your Department as to whether the corporation should be allowed to have perpetual existence or whether its charter has expired under the provision of Article 1320."

The act of the Republic of Texas on February 5, 1841, under which the Galveston City Company was incorporated reads as follows:

"Sec. 1. Be it enacted by the Senate and House of Representatives of the Republic of Texas, in Congress assembled, That the stockholders in the Galveston City Company, be, and they are hereby incorporated under the same name and style, and under it may transfer their rights by succession or assignment, and shall be persons in law capable of suing and being sued, pleading and being impleaded, answering and being answered unto, defending and being defended, in all courts and places whatsoever; and also, that they and their successors by the same name and style, shall be in law capable of holding, and of conveying any estate, real, personal, or mixed, and doing and performing all things which are necessary, and not contrary to the Constitution of this Republic.

"Sec. 2. Be it further enacted, That the management of the affairs of said company, shall be conducted by a board of five directors, each of whom, shall own at least five shares of the capital stock of said company, and three of said directors shall constitute a quorum, to do and perform all the business necessary to the successful operation of said company. A majority of said directors shall

Honorable Wm. E. Lawson, page 3

appoint a president from their own number, and fill such vacancies as may from time to time take place from death, resignation, or otherwise: the election of directors shall take place in the city of Galveston, on the first Monday of November of each and every year, and in case of failure to so elect said directors, the corporation shall not be dissolved for that cause, but the president and directors for the time being, shall continue in office until there shall be an election; provided, also, that it shall be the duty of said directors, to call a meeting of the stockholders at an early day, to elect the directory so omitted to be done at the regular period.

"Sec. 3. Be it further enacted, That each stock-holder shall have one vote for each share that he may own, and may vote in person or by proxy.

"Sec. 4. Be it further enacted, That the president and directors, shall have authority to adopt all such rules, regulations, and by-laws, as they may consider necessary for the proper management of the affairs of said company.

"Sec. 5. Be it further enacted, That it shall not be lawful under this act, for the company to exercise banking privileges in any form whatever."

Article XII of the State Constitution deals with the creation of private corporations and Sec. 7 of said Article reads as follows:

"Nothing in this article shall be construed to divest or affect rights guaranteed by any existing grant or statute, of this State, or of the Republic of Texas."

We will note briefly that the original common law conception regarding corporations as bodies politic for municipal, ecclesiastical or eleemosynary purposes. The corporate plan of organization was extended by royal charter to parties combining political purposes with purely profit-earning functions; and it has been further extended, especially in recent times, until it embraces practically every known form of business enterprise. (Taylor Seed Pen Company v. Taylor National Bank, 131 S.W. 534, and 215 S. W. 880)

Honorable Wm. J. Lawson, page 4

According to the common law doctrine, a corporation might be created by grant from the crown by prescription and by statute. (Lyons-Thomas Hardware Co. v. Perry Stove Manufacturing Company, 24 S. W. 16).

In Texas the doctrine is that the creation of a corporate franchise is an attribute of sovereignty to be exercised solely by the supreme power of the State; and, under our system of government, the power of granting a franchise is vested in the legislative department. Prior to the year 1871, this power was exercised by special act, the first general law having been enacted in that year. The State Constitution adopted in the year 1876 contained important provisions on the subject of incorporated bodies. The creation of private corporations except under general laws was forbidden; the Legislature was directed to enact general laws providing for the creation of corporations; and the issuance of stocks and bonds, except for adequate considerations was prohibited. (Article XII, Sections 1, 2 and 6, State Constitution; Regis Candies, Inc., v. Hovas, 3 S. W. (2d) 429, and 8 S. W. (2d) 574).

The creation of corporations by the grant of charter to associations of individuals is an attribute of state sovereignty exercisable under the Constitution of Texas by the Legislature. As above stated, this power was formerly exercised by special act; and until the passage of a general law in 1871, this was the only way that a corporation could be created. (Lampman v. Tarver, 29 S. W. 768). This method of creation of private corporations is now forbidden by the Constitution (Article XII, Section 1, State Constitution) Corporations previously created by special act were not affected. (Article XII, Section 7, State Constitution, and Texas Jurisprudence, Vol. X, page 620). However, it is to be noted that the inchoate rights of the associations or individuals, who had obtained special acts from the Legislature empowering them to organize corporations upon compliance with conditions specified in the act, lapsed upon adoption of the prohibition of incorporation by special act. (Davis v. Allison, 211 S. W. 980.)

It is stated in Fletcher Cyclopedia on Corporations, Vol. 1, pages 12 and 862, as follows:

"As has been seen, Blackstone regarded the capacity of perpetual succession as an essential attribute of a corporation, and the same view has been taken by other authorities. In this connection

Honorable Wm. J. Lawson, page 5

it may be well to observe that the term 'per-
petual succession' is not generally construed to
imply corporate immortality, but rather a continuity
of existence, irrespective of that of its component
members, limited in duration to the period stated
in its charter or the act authorizing the granting
thereof. . .

". . .

"Though a corporation, unless the period for
which it may exist is limited by statute, has the
capacity of perpetual succession, the period for
which a corporation may exist is now very generally
limited by the special or general laws by or under
which it is created. A corporation, as is the case
with a natural person, may cease to exist, and this
cessation of existence may be accomplished in any
one of several ways. So it may be dissolved, and
thus cease to exist, by the expiration of the period
fixed for its duration by its charter or the general
law under which it was formed, unless such period
is subsequently extended in some lawful way; or by
the happening of some other contingency prescribed
by its charter; or by the repeal or withdrawal of
its charter under a power of repeal reserved by
the legislature; or by the failure or loss of some
integral part of the corporation, without which
it cannot exist; or by a surrender of its charter,
authorized or accepted by the state; or by a for-
feiture of its charter for misuser, or nonuser,
or a failure to perform conditions subsequent, in a
proceeding instituted for that purpose by the state;
or in such other ways as the statute may prescribe.
. ."

It is stated Volume 1, Third Edition, Thompson on Corpora-
tions, pages 357 and 358, as follows:

". . . The life of the corporation is now gen-
erally fixed by its charter or by the general law
on the subject. Where a charter granted by special
act is silent on the question, or the articles of
incorporation fix a period greater than that allowed,
then the matter is determined by reference to the
general law on the subject, and when this is done it
is the general law operative at the time the charter

Honorable Wm. J. Lawson, page 6

was granted that governs. The life of a corporation does not depend in any way on the life of its incorporators, but the duration of its existence must be fixed in some way. Eternal life is not an attribute of corporate existence. The expression 'perpetual succession' implies nothing more than a continuance of succession during the existence of the corporation. In the absence of some express statute, the corporation will continue until either its charter expires or its dissolution is decreed by the courts in a proper proceeding. The fact that a charter provides for perpetual succession does not imply a grant of perpetual existence. All doubts in corporate charters are resolved against an intention to grant perpetual existence. Such a provision is intended merely to give a corporation continuous succession so long as it continues in existence, and not to define its duration. . ."

In view of the foregoing authorities and the above stated facts, you are respectfully advised that it is the opinion of this Department that the charter of the Galveston City Company has not expired by virtue of Article 1320, Vernon's Annotated Civil Statutes. It is our further opinion that the corporation will continue to exist until its dissolution is decreed by the courts in a proper proceeding, by surrender of its charter, or by dissolution by any method provided by law.

Trusting that the foregoing fully answers your inquiry, we are

APPROVED JUL 9, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

AW:N

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN